**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ERICA WALKER,

Plaintiff,

v.

GURSTEL LAW FIRM, P.C.; ABC
LEGAL SERVICES, LLC; and JOHN
DOE,

Defendants.

Case No. 25-cv-3774 (JWB/JFD)

**ORDER**
**and**
**REPORT AND**
**RECOMMENDATION**

This action arises from the attempted service of process on Plaintiff Erica Walker by a process server from Defendant ABC Legal Services, LLC ("ABC"). The attempted service was of a summons and complaint for a Minnesota state-court action commenced against Ms. Walker by a creditor, Capital One, N.A. Defendant Gurstel Law Firm, P.C. ("Gurstel") represents Capital One, N.A. in that action. Ms. Walker alleges that the attempted service and Gurstel's subsequent communications with a consumer protection bureau violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and a Minnesota consumer-protection statute, Minn. Stat. § 332.37. She also brings claims against Gurstel and ABC for invasion of privacy by intrusion upon seclusion, common-law fraud, abuse of process, and vicarious liability/respondeat superior. In

addition, Ms. Walker sues Defendant John Doe, the process server, under the FDCPA, under Minn. Stat. § 332.37, for intrusion upon seclusion, and for abuse of process.[1]

The case is before the Court on Gurstel and ABC's Motion for Judgment on the Pleadings (Dkt. No. 49) and Ms. Walker's Motion for Leave to File a Supplemental Complaint (Dkt. No. 63).[2] For the reasons set forth below, the Court recommends that Gurstel and ABC's motion for judgment on the pleadings be granted in part and denied in part, and the Court denies Ms. Walker's motion for leave to file a supplemental complaint.

## I.      Applicable Legal Standards

A motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same legal standard as a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Rule 12(b)(6) requires dismissal when a pleading fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[1] As of this writing, Defendant John Doe has not been served and so has not made an appearance in this litigation. In this Order and Report and Recommendation, "Defendants" means only Gurstel and ABC unless otherwise indicated.

[2] The motion for judgment on the pleadings was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff's motion to file a supplemental complaint, which is opposed by Gurstel and ABC on the grounds of futility (Defs.' Mem. Opp'n Mot. Suppl. at 1–2, Dkt. No. 71), is before the Court pursuant to 28 U.S.C. § 636(b)(1)(A). If a party seeks further review of this Court's findings and conclusions for either motion (or both) the standard of review for the District Judge will be de novo. *See* 28 U.S.C. § 636(b)(1) (establishing de novo review for objections to a report and recommendation); D. Minn. LR 72.2(a)(3)(B) (establishing de novo review for an appeal of a magistrate judge's determination of the issue of futility in the context of a motion to amend a pleading). Accordingly, the Court addresses the motions together in a combined Order and Report and Recommendation.

2

*Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. For a claim to be facially plausible, the party must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true the facts alleged in the complaint and views them in the pleading party's favor. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). "Judgment on the pleadings is appropriate if there is no material issue of fact to be resolved and the moving party is entitled to judgment as a matter of law." *Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.*, 715 F.3d 695, 697 (8th Cir. 2013).

> Federal Rule of Civil Procedure 15(d) governs supplemental pleadings.
>
> (d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). A supplemental complaint is different than an amended complaint. "An amended pleading is designed to include matters occurring before the filing of the [complaint] but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause." *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977) (quoting *Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101 (W.D. Mo. 1939)). Notwithstanding that distinction, a motion to file a supplemental pleading under Rule 15(d) is governed by the

3

same legal standards as a motion to amend a pleading under Rule 15(a). *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, No. 06-CV-4112 (ADM/JSM), 2009 WL 10677527, at \*14 n.7 (D. Minn. Feb. 9, 2009) (citing cases). Under Rule 15(a), leave to amend should be freely granted when so required by justice, unless there is a showing of "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987); *see* Fed. R. Civ. P. 15(a)(2). A proposed amendment (or supplementation) is futile if the amended complaint (or supplemental complaint) "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *See Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008).

## II.     Background

### A.     Facts Alleged in the Complaint

Gurstel is a law firm that specializes in debt collection (Compl. ¶ 2, Dkt. No. 1-1) and represents Capital One, N.A. in an action commenced against Ms. Walker in Minnesota state court (Compl. Ex. 1, Dkt. No. 1-1 at 28–32[3]). ABC provides service-of-process services for debt collectors such as Gurstel. (Compl. ¶ 3.) Defendant John Doe is a process server for ABC, who was identified by ABC in an internal investigation report as "Kpakpo Moevi." (*Id.* ¶ 4.)

---

[3] The Complaint is attached to the Notice of Removal (Dkt. No. 1) filed by Gurstel and ABC. The exhibits to the Complaint are not marked or separately paginated. The Court therefore cites to the docket number and CM/ECF pagination for those exhibits.

Ms. Walker, noting that service was attempted on her before a lawsuit was filed in state court, alleges that Defendants created and used documents that resembled a complaint and summons to create the false impression of an active lawsuit. (*Id.* ¶ 9.) On July 31, 2025, John Doe approached Ms. Walker's residence, rang the doorbell, attempted to open the door, and paged through the purported summons and complaint before placing them under the doormat. (*Id.* ¶¶ 10–11.) Ms. Walker did not answer the door, and no one personally interacted with John Doe. (*Id.* ¶ 10.) Ms. Walker's Ring security camera captured the events. (*Id.*) Ms. Walker retrieved the documents from beneath the doormat the following day, on August 1, 2025. (*Id.* ¶ 12.)

Ms. Walker filed a consumer complaint with the federal Consumer Financial Protection Bureau ("CFPB") on August 2 or 5, 2025.[4] (*Id.* ¶ 13; Compl. Ex. 2, Dkt. No. 1-1 at 33.) She alleged "(1) false service, (2) repeated harassment through multiple visits, (3) dissemination of documents styled to mimic a lawsuit when none had been filed; (4) misrepresentation of an internal reference number as a court docket number; and (5) invasion of privacy by the process server reviewing debt-related documents at her door." (Compl. ¶ 13.) Gurstel submitted a written response to the CFPB on August 13, 2025. (*Id.* ¶ 14; Compl. Ex. 2, Dkt. No. 1-1 at 34–35.) In that response, Gurstel referred to the documents as a "suit," even though no lawsuit had been filed. (Compl. ¶ 14.) Gurstel also stated that Ms. Walker had been personally served by John Doe and that the documents were not left under the doormat. (*Id.*)

---

[4] The Complaint alleges August 5; the consumer complaint itself is dated August 2.

Ms. Walker filed a second consumer complaint with the CFPB on August 13, 2025. (*Id.* ¶ 16; Compl. Ex. 11, Dkt. No. 1-1 at 43–44.) She alleged that Gurstel's response to the first complaint contained false and misleading statements, that Gurstel had simulated legal process, that Gurstel had ignored her privacy concerns, and that Gurstel had violated debt-collection and ethical rules. (Compl. ¶ 16.) That same day, Ms. Walker sent Gurstel and ABC a written demand for John Doe's affidavit of service and all records related to the alleged service. (*Id.* ¶ 17.)

On August 18, 2025, Gurstel sent Ms. Walker a copy of ABC's investigation report. (Compl. ¶ 21; Compl. Ex. 13, Dkt. No. 1-4 at 4.) The report stated that John Doe claimed he had personally served the documents on a white female with blonde hair, 5'8" to 5'10" tall, weighing 140–160 pounds. (Compl. ¶ 23; Compl. Ex. 13, Dkt. No. 1-4 at 5.) Ms. Walker is an African American woman with Sisterlocks, 5'6" tall, weighing 196 pounds. (Compl. ¶ 23.) John Doe also claimed he had confirmed Ms. Walker's identity. (Compl. Ex. 13, Dkt. No. 1-4 at 7.) As further inquiry has now shown, almost every statement made by John Doe was a lie.

Gurstel submitted a response to the second CFPB complaint on August 20, 2025—after Gurstel received ABC's report. (Compl. ¶ 19; Compl. Ex. 11, Dkt. No. 1-1 at 44–45.) Gurstel did not provide information from ABC's investigation report, however, instead saying that it had relied on the affidavit of service and had reached out to ABC to obtain additional information. (*Id.* ¶ 19; Compl. Ex. 11, Dkt. No. 1-1 at 44–45.)

Ms. Walker filed a third consumer complaint on August 20, 2025, regarding Defendants' "continued misrepresentations" that she had been personally served and that no privacy violations had occurred. (Compl. ¶ 27.)

Based on the facts alleged in the Complaint, Ms. Walker brings six claims for relief: (1) false, deceptive, and misleading representations against all three Defendants, pursuant to the FDCPA, Minn. Stat. § 332.37(12), and state common law; (2) intrusion upon seclusion/privacy violations against all three Defendants, pursuant to Minn. Stat. § 332.37(12) and state common law; (3) failure to provide required documents/unlawful collection practices against Gurstel and ABC, pursuant to the FDCPA and Minn. Stat. § 332.37(7); (4) fraudulent misrepresentation to a federal agency against Gurstel, pursuant to the FDCPA and state common law; (5) abuse of process/simulated legal process against all three Defendants, pursuant to the FDCPA, Minn. Stat. § 332.37(12), and state common law; and (6) vicarious liability/respondeat superior liability against Gurstel and ABC, pursuant to Minnesota law. (Compl. ¶¶ 30–46.)

### B.    Facts Alleged in the Proposed Supplemental Complaint

Consistent with the legal standards applicable to motions to supplement a pleading, the proposed supplemental facts summarized in this section occurred after September 25, 2025, the date this case was removed to federal court.

On September 29, 2025, Gurstel mailed Ms. Walker a packet containing a document titled "Plaintiff's Reply to Defendant's Answer and Counterclaim," with the *Capital One, N.A. v. Walker* state-court case caption. (Suppl. Compl. ¶ 31, Dkt. No. 66-1.) The case had not yet been filed in state court. (*Id.* ¶ 33.) The accompanying "Affidavit of Service by

Mail" had the notation "Hennepin County Court Admin. – via E-Filing," which Ms. Walker believes is typically used on formal court filings. (*Id.* ¶ 34.) Ms. Walker alleges that the state-court caption and affidavit of service were fabricated and no such action existed. (*Id.* ¶ 35.)

On January 15, 2026, Ms. Walker was physically handed the *Capital One, N.A. v. Walker* summons and complaint, just before a hearing in this case at the St. Paul federal courthouse. (*Id.* ¶ 41.) The documents were substantively identical to the documents left under her doormat on July 31, 2025. (*Id.*) Ms. Walker alleges that this attempt at service of process was implicitly contrary to Defendants' previous representation that the July 31, 2025 attempted service was valid. (*Id.* ¶¶ 41, 43–45.)

Ms. Walker alleges that Defendants' conduct on September 29, 2025, and January 15, 2026, was false, deceptive, fraudulent, and misleading; simulated legal process; and violated the FDCPA. (*Id.* ¶¶ 49, 56, 60, 64.) She seeks to supplement her complaint to add the September 29th and January 15th events as additional violations to all claims except intrusion upon seclusion.

## III. Discussion

### A. Count One: False, Deceptive, and Misleading Representations Against Gurstel and ABC

Ms. Walker alleges that Gurstel and ABC violated 15 U.S.C. §§ 1692e(2)(A), 1692e(9), and 1692e(13), and Minn. Stat. § 332.37(12), by creating and disseminating documents deliberately formatted to resemble a state-court summons and complaint when no such suit had been filed. (Compl. ¶ 30.) She further accuses Defendants of fabricating a

false affidavit of service representing that she had personally accepted the summons and complaint, in violation of 15 U.S.C. §§ 1692e(2)(A), 1692e(8), and 1692e(10). (*Id.* ¶ 31.) Ms. Walker contends these actions also constituted common-law fraudulent misrepresentation. (*Id.*)

### 1.      The State-Court Summons and Complaint

The Court begins with the allegation that Gurstel and ABC violated the FDCPA by creating and disseminating documents formatted to resemble a state-court summons and complaint when no such action had been filed. Title 15 U.S.C. § 1692e(2)(A) prohibits a debt collector from making a false representation of the amount, character, or legal status of a debt. Title 15 U.S.C. § 1692e(9) prohibits a debt collector from distributing or using a written communication that simulates or is falsely represented to be a document issued or authorized by a court. Title 15 U.S.C. § 1692e(13) prohibits a debt collector from making a false implication or representation that documents constitute legal process.

The Court finds that the Complaint does not plead facts that would create a plausible claim for relief under any of these provisions, because the creation and attempted service of the state-court summons and complaint were authorized under Minnesota law. Under the Minnesota Rules of Civil Procedure, a civil action is commenced when a summons and complaint are served on a defendant. Minn. R. Civ. P. 3.01(a) (providing action is commenced when summons is served); Minn. R. Civ. P. 3.02 (requiring complaint to be served with the summons). It is service, not filing, that commences a civil action. The action need not be filed in state court until one year after it is commenced. Minn. R. Civ. P. 5.04(a).

It was neither deceptive nor misleading for Gurstel and ABC to attempt service of the summons and complaint on Ms. Walker before the state-court action was filed. The summons and complaint were authentic and signed by a licensed attorney. Commencing an action pursuant to Minnesota state procedural rules does not violate the FDCPA. It is not a false representation about a debt, a simulation of a court-issued or authorized document, or false legal process. Thus, Ms. Walker has not sufficiently alleged a false, deceptive, or misleading representation.

In addition, Ms. Walker has not alleged facts showing that the state-court summons, complaint, or attempted service were material in the context of § 1692e. The Eighth Circuit has held that a false statement is not actionable under § 1692e unless it is material. *Hill v. Accts. Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018). The FDCPA "is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757–58 (7th Cir. 2009) (*quoted in Hill*, 888 F.3d at 345–46); *see Caulfield v. Am. Acct. & Advisors, Inc.*, No. 12-CV-2761 (DSD/JJK), 2013 WL 1953314, at *2 (D. Minn. May 10, 2013) (describing a material statement as one that "undermined [the debtor's] ability to intelligently choose her action regarding the debt"). Relatedly, if no one was actually misled or deceived by the communication, no violation of § 1692e occurred. *See Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012); *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437–38 (8th Cir. 2015). The Complaint pleads no facts from which the Court could reasonably infer that the summons, complaint, or

10

attempted service undermined Ms. Walker's ability to intelligently choose her actions regarding the debt or that she was actually influenced or misled by the attempted service.

## 2.    The Affidavit of Service

The Court now turns to the FDCPA claims based on the affidavit of service that falsely asserted Ms. Walker had been personally served and on Gurstel's representation to the CFPB that Ms. Walker had been personally served. Title 15 U.S.C. § 1692e(8) prohibits a debt collector from communicating false credit information, and § 1692e(10) prohibits using a false representation or deception to collect or attempt to collect a debt. And, as recounted above, § 1692e(2)(A) prohibits a debt collector from making a false representation of the amount, character, or legal status of a debt.

Ms. Walker has not alleged a plausible claim for relief under these provisions because the alleged falsity in the affidavit of service was not about a debt or false credit information. *See* 15 U.S.C. § 1692e(2)(A), (8). Rather, the alleged falsity was that Ms. Walker had been personally served with a summons and complaint. The Court need not decide whether a false statement that Ms. Walker had been served could have been used later as part of an application for default and then a motion for default judgment, or whether those hypothetical steps would have been an effort to collect a debt, because the affidavit of service was not used to attempt to collect a debt, *see id.* § 1692e(10), or used in connection with the collection of a debt, *see id.* § 1692e. The affidavit was never used at all; it was not even sent to Ms. Walker or the CFPB. Gurstel did send ABC's investigation report to Ms. Walker, but only at her request, pursuant to her written demand for all records related to the alleged service of process. A document sent to Ms. Walker at her own request

11

does not have the "animating purpose" to "induce payment" by her. *See McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (concluding that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor") (quotation omitted).

With respect to the allegation that Gurstel repeated false information from the affidavit in its August 13, 2025 response to the CFPB, that also was not a communication made in connection with the collection of a debt. Gurstel's communication was sent to a federal agency in response to a complaint filed by Ms. Walker, not a communication with the animating purpose to induce payment by Ms. Walker.

Ms. Walker also has not shown that the false information in the affidavit or Gurstel's or ABC's statements about the affidavit were material or that she or anyone else were misled. She has not alleged, for example, that the statements influenced her or induced her to act to her detriment. To the contrary, Ms. Walker knew the information in the affidavit was false.

In sum, Gurstel and ABC did not communicate false credit information, use a false representation as a means to collect a debt, or make a false representation about the nature or legal status of a debt with respect to the affidavit of service. Nor has Ms. Walker plausibly alleged that any statements in the affidavit or about the affidavit were material or that anyone was misled.

### 3. Process Servers

ABC argues that it is exempt from the FDCPA because it is a process server. The FDCPA excludes process servers from the definition of "debt collector." *See* 15 U.S.C.

§ 1692a(6)(D) (excluding "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt"). An allegation that a process server falsely executed an affidavit of service, however, removes it from the process-server exception. *See Harbison v. Litow & Pech, P.C.*, No. 4:12-CV-2180 SNLJ, 2013 WL 1095654, at *5 (E.D. Mo. Mar. 18, 2013) (citing cases). The Court declines to apply the exception here, in light of allegations that ABC's process server John Doe falsified an affidavit of service.

### 4.    Minnesota Statute § 332.37(12)

Minnesota Statute § 332.37(12) prohibits violations of the FDCPA while attempting to collect a debt. Thus, resolution of this claim follows the resolution of Ms. Walker's FDCPA claims. Accordingly, for the reasons set forth above, the Court concludes that Ms. Walker has not alleged a plausible Minn. Stat. § 332.37(12) claim in Count One.

### 5.    Common-Law Fraud

Ms. Walker alleges that the false affidavit and Gurstel's statement to the CFPB that she was personally served were fraudulent misrepresentations. The elements of a fraudulent misrepresentation claim are:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986). Fraud must be pleaded with particularity, though intent and knowledge may be generally alleged. Fed. R.

13

Civ. P. 9(b). Here, the Complaint does not allege that a false representation was made with the intention to induce Ms. Walker to act in reliance, that the representation caused her to act in reliance, or that she suffered pecuniary damage as a result. Accordingly, the fraudulent misrepresentation claim alleged in Count One against Gurstel and ABC should be dismissed.

### 6.    Allegations in the Proposed Supplemental Complaint

Ms. Walker proposes to add two violations of the FDCPA to Count One: (1) Gurstel's mailing to her of a packet containing Capital One, N.A.'s reply to Ms. Walker's purported answer in the state-court case, *Capital One, N.A. v. Walker*, on September 29th; and (2) the service of process at the courthouse on January 15th. (Suppl. Compl. ¶ 49.) Ms. Walker alleges the September 29th mailing and the January 15th service of process were false, deceptive, and misleading representations, and simulated legal process, in violation of 15 U.S.C. § 1692e(2), (5), (9), (10), and (13). (Suppl. Compl. ¶ 49.)

The Court denies this aspect of the motion to supplement because supplementation would be futile. The January 15th service of process did not violate the FDCPA for the same reasons the attempted July 31st service did not. Minnesota state procedural rules expressly permit the service of a summons and complaint before the documents are filed with the court. Thus, the alleged service of process on January 15th was not a false representation about a debt, a simulation of a court-issued or authorized document, or false legal process. *See* 15 U.S.C. § 1692e(2)(A), (9), (13). Nor has Ms. Walker shown that the alleged service was a threat to take action that could not legally be taken. *See* 15 U.S.C.

§ 1692e(5). After Gurstel determined that the July 31st attempted service was not effective, Gurstel simply re-attempted service. Ms. Walker has not shown that to violate the FDCPA.

With respect to the September 29th mailing, Gurstel explains that the "reply" was drafted and sent to Ms. Walker by mistake. (Defs.' Mem. Opp'n Mot. Suppl. at 3 n.1, Dkt. No. 71.) When Gurstel received Ms. Walker's *Complaint* filed in *this* action, it appears to have mistakenly believed the document was Ms. Walker's *answer* to Capital One, N.A.'s *state-court* complaint against her. (*Id.*) Based on that mistake, Gurstel mailed Ms. Walker the reply. (*Id.*) This was a highly unfortunate error, particularly coming on the heels of the false affidavit, but Gurstel's explanation is not implausible and is consistent with the pleadings. Plaintiff's Complaint was filed in state court on September 2, and Gurstel mailed the reply on September 29. (Suppl. Compl. ¶¶ 45–46.) In addition, the reply's reference to paragraphs in what Gurstel thought was Ms. Walker's answer match the paragraphs in her Complaint. (*See* Suppl. Compl. Ex. 16, Dkt. No. 67-1 (*i.e.*, denying allegations in paragraphs 8–46, which are the factual allegations in the Complaint).)

Although Gurstel made a mistake, Gurstel did not violate the FDCPA. As discussed fully above, the state-court action *Capital One, N.A. v. Walker* was commenced pursuant to Minnesota law, even though it had not been filed. Gurstel's mailing of a "reply" containing the case caption and in the format of a formal court document was not a false representation about a debt, a simulation of a court-issued or authorized document, false legal process, or a threat to take action that could not legally be taken. Gurstel's mistake was careless, but it was not a violation of the FDCPA. *See Seaworth v. Messerli*, No. 09-3437 (RHK/LIB), 2010 WL 3613821, at *6 (D. Minn. Sept. 7, 2010) (finding that service

15

of a summons and complaint with an incorrect case number did not violate the FDCPA), *aff'd*, 414 F. App'x 882 (8th Cir. 2011).

Moreover, Ms. Walker has not alleged facts from which the Court could reasonably infer that the September 29th mailing or the January 15th service were material in the context of § 1692e, *see Hill*, 888 F.3d at 346, or that Ms. Walker was actually misled or deceived by the communications, *see Hemmingsen*, 674 F.3d at 819. Accordingly, the Court denies Ms. Walker's motion to supplement Count One as futile.

## B.      Count Two: Intrusion upon Seclusion/Privacy Violations Against Gurstel and ABC

Ms. Walker alleges that Defendants violated her right to privacy when John Doe (1) reviewed debt-related documents on her doorstep in view of her neighbors and passersby, (2) left the documents beneath her doormat, and (3) fabricated interactions that falsely depicted personal service. (Compl. ¶ 32.) She contends these actions also violated Minn. Stat. § 332.37(12). (*Id.* ¶ 33.)

In Minnesota, the tort of intrusion upon seclusion has three elements: "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App. 2001). Gurstel and ABC argue that Ms. Walker has not pleaded "an intrusion" because "an intrusion" must be a physical invasion into a private area or the use of one's senses to invade another person's private affairs. (Defs.' Mem. Supp. Mot. J. Pleadings at 17 (citing *Jones v. Walgreens Co.*, No. A11-1261, 2012 WL 1658895, at *4 (Minn. Ct. App. May 14, 2012) ("An intrusion can be a physical intrusion into a private

place or an intrusion made by defendant's senses, such as overhearing plaintiff's private affairs.")), Dkt. No. 51.) An intrusion can also be, for example, opening a person's personal and private mail or examining her private bank account information. Restatement (Second) of Torts § 652B, cmt. b. (1977). There is no actionable intrusion, however, for examining a public record. *Id.*, cmt. c.

The Court concludes it is possible that the process server's review of the summons and complaint was an intrusion. The summons and complaint had not been filed publicly, and they contained private information such as the amount of a debt Ms. Walker allegedly owed and the last four digits of her credit account number. (*See* Compl. Ex. 1, Dkt. No. 1-1 at 28–32.) It is also possible that the process server's placement of the summons and complaint under the doormat was an intrusion. The doormat was in front of Ms. Walker's front door and was arguably part of the home's curtilage.

Other alleged conduct was also not an intrusion. For one, the process server's alleged preparation of a false affidavit is appalling behavior, but it was simply not an intrusion of any kind. And two, with respect to the allegation that personal and confidential information may have been exposed to or seen by neighbors or passersby when John Doe paged through the documents, publicity of information is not an element of intrusion upon seclusion. Restatement (Second) of Torts § 652B, cmt. a. Thus, neither of these allegations state a plausible claim for relief.

Turning to whether an actionable intrusion was "highly offensive," the question is whether a reasonable person would find it so. *Kennedy v. City of Braham*, 67 F. Supp. 3d 1020, 1035 (D. Minn. 2014) (citing *Lake v. Wal–Mart Stores, Inc.*, 582 N.W.2d 231, 233

17

(Minn. 1998)). This is generally a question of fact for the jury; it is "a question of law only if reasonable persons can draw only one conclusion from the evidence." *Id.* (cleaned up). Factors to weigh "include the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Bauer v. Ford Motor Credit Co.*, 149 F. Supp. 2d 1106, 1109 (D. Minn. 2001).

Gurstel and ABC argue that the context of the attempted service was "ordinary service of a summons and complaint" and note that the process server did not enter Ms. Walker's home. (Defs.' Mem. Supp. Mot. J. Pleadings at 17.) Gurstel and ABC further argue that a plaintiff must be able to serve process on a defendant without exposing itself to tort liability. (*Id.* at 17–18.) Gurstel and ABC fail to grasp the nature of the possible claim against John Doe. The potentially actionable intrusions were the process server's viewing of the summons and complaint and his leaving the summons and complaint under the doormat. Neither of those events were necessary to effect service of process. Indeed, leaving a summons and complaint under a doormat does not achieve personal service. Thus, the attempted service cannot be fairly characterized as "ordinary." As to the argument that a plaintiff must be able to serve a summons and complaint without risking tort liability, John Doe did not need to review the documents in order to serve them. Thus, the argument fails. Finally, it was not necessary for John Doe to enter Ms. Walker's home for the tort of intrusion upon seclusion to have occurred.

Before moving on to the statutory aspect of this claim, the Court considers John Doe's employment status. Ms. Walker has alleged that John Doe was either an employee

or an independent contractor of ABC. (Compl. ¶ 4.) Viewing the allegations in Ms. Walker's favor, the Court will not recommend dismissal of the intrusion upon seclusion claim against ABC. It may be determined later in the case that John Doe was an independent contractor, but for present purposes it is plausible that John Doe was an employee of ABC and that ABC could be directly liable for the intrusion if it ratified John Doe's conduct. *See* Restatement (Third) of Agency § 7.03 (2006). Ms. Walker has not alleged, however, that John Doe was an employee of Gurstel, though she does allege that Gurstel could be vicariously liable for John Doe's actions. Thus, the Court will recommend that the intrusion upon seclusion claim against Gurstel be dismissed, but as discussed in Part III.F that a claim for vicarious liability against Gurstel remain.

Ms. Walker contends that Gurstel and ABC also violated Minn. Stat. § 332.37(12) by invading her privacy. That statute bars collection agencies from violating the FDCPA, not from invading a consumer's privacy. Thus, the Court recommends dismissing this aspect of the intrusion upon seclusion claim against both Gurstel and ABC.

### C. Count Three: Failure to Provide Required Documents and Unlawful Collection Practices Against Gurstel and ABC

#### 1. Original Complaint

Ms. Walker alleges that Gurstel and ABC violated 15 U.S.C. § 1692g(b) and Minn. Stat. § 332.37(7) by not providing, upon her demand and within five days, the affidavit of service, original photographs, and metadata related to the alleged service of process. (Compl. ¶¶ 34–35, 37.) Rather, Gurstel and ABC mailed ABC's investigation report but no affidavit or any other documentation. (*Id.* ¶ 35.) Moreover, Ms. Walker alleges that

19

Defendants continued collection activities, including submitting false statements to the CFPB and mailing her a letter expressly marked as a debt collection communication on August 18, 2025. (*Id.* ¶ 36.)

Title 15 U.S.C. § 1692g governs the validation of debts. Section 1692g(b) prohibits debt collection activities concerning a disputed debt when a debt collector sends an "initial communication" to a consumer "in connection with the collection of any debt," 15 U.S.C. § 1692g(a), and the consumer notifies the debt collector "in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed," *id.* § 1692g(b). "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." *Id.* § 1692g(d).

Here, the alleged "initial communication" from Gurstel was the summons and complaint, which are formal court pleadings excluded from the definition of an "initial communication." *See id.* Thus, the five-day obligation to furnish a written notice imposed by § 1692g(a) was not triggered. But even if it were, the requested affidavit of service, photographs, and metadata do not fall under the written-notice requirements of § 1692g(a), which requires the written notice to contain only:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment

against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* § 1692g(a). The statute does not require the debt collector to provide documents or information such as the affidavit of service, photographs, and metadata requested by Ms. Walker.

As to the investigation report mailed on August 18, the report was not covered by § 1692g(b) because there was no qualifying "initial communication" from any Defendant to Ms. Walker. In addition, Gurstel mailed the report to Ms. Walker in response to her written demand for the affidavit of service and all related documents. A communication that was not sent to collect a debt but was sent in response to a debtor's request does not fall under the FDCPA. *See Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 330–31 (D. Conn. 2012); *Grambart v. Glob. Payments Check Recovery Servs., Inc.*, No. 10-CV-4399 (DSD/JJK), 2011 WL 124230, at *2 (D. Minn. Jan. 14, 2011).

Minnesota Statute § 332.37(7) prohibits a collection agency from publishing a list of debtors, using "shame cards" or intimidation, or advertising to sell a claim as a means of forcing payment. There are no allegations of such conduct.

The Court recommends that Count Three be dismissed.

### 2. Supplemental Complaint

Ms. Walker proposes to add two instances of collection activity to Count Three: the "reply" mailed on September 29th and service of the summons and complaint on January

15th. The statute under which she proposes to sue is § 1692*e*, whereas her original claims under Count Three were brought under § 1692*g*. (*See* Suppl. Compl. ¶ 56.)

The Court denies this aspect of the motion to supplement because supplementation would be futile. With respect to a supplemental claim brought under § 1692e, the claim fails because Ms. Walker has not alleged facts that the September 29th mailing or the January 15th service were material, misleading, or deceptive. If Ms. Walker intended to sue under § 1692g, the claim fails because there was no qualifying initial communication from a debt collector.

### D.      Count Four: Fraudulent Misrepresentation to Federal Agency Against Gurstel

#### 1.      Original Complaint

Ms. Walker asserts that Gurstel knowingly misrepresented facts to the CFPB on August 20, 2025, when it said it had reached out to ABC to obtain additional information. (Compl. ¶ 38.) This was false, according to Ms. Walker, because Gurstel had already received ABC's investigation report. (*Id.*) Ms. Walker contends that Gurstel also knew the affidavit of service had been falsified yet repeated the process server's false narrative in its response to the CFPB. (*Id.* ¶ 39.) Ms. Walker contends these misrepresentations were deliberate, intentional, and knowing, and violated both 15 U.S.C. § 1692e(10) and common-law fraud principles. (*Id.* ¶ 40.)

Title 15 U.S.C. § 1692e(10) prohibits a debt collector from using a false representation or deception to collect or attempt to collect a debt. To be actionable under § 1692e, the false statement must be material, *Hill*, 888 F.3d at 346, and someone must

have actually been misled or deceived by the communication, *Hemmingsen*, 674 F.3d at 819. The Complaint's allegations are deficient in both respects. There are no facts from which the Court could reasonably infer that Gurstel's statements to the CFPB were material or that Ms. Walker or anyone else was influenced by or misled by the alleged statements. Nor did Gurstel use the August 20th response to the CFPB complaint to collect or attempt to collect a debt. Gurstel sent the response only because Ms. Walker filed a complaint with the CFPB.

With respect to Ms. Walker's common-law fraud claim, the Complaint does not allege that a false representation was made with the intention to induce Ms. Walker to act in reliance, that the representation caused her to act in reliance, or that she suffered pecuniary damage as a result. Accordingly, Count Four should be dismissed in its entirety.

### 2.      Supplemental Complaint

Ms. Walker proposes to supplement Count Four with allegations that Defendants physically handed Ms. Walker documents on January 15th without disclosing their duplicative nature or correcting previous false statements. (*See* Suppl. Compl. ¶ 60.) The Court denies this aspect of the motion to supplement because supplementation would be futile. The supplemental complaint does not demonstrate that the new alleged misrepresentations were material, misleading, or deceptive. Thus, the FDCPA claim is futile. The supplemental complaint also fails to allege that a false representation was made with the intention to induce Ms. Walker to act in reliance, that the representation caused her to act in reliance, or that she suffered pecuniary damage as a result. Accordingly, the state-law fraud claim is futile as well.

23

### E.   Count Five: Abuse of Process/Simulated Legal Process Against Gurstel and ABC

Ms. Walker alleges that Defendants created the false appearance of a lawsuit through simulated pleadings, faulty service, and a fabricated affidavit of service, violating 15 U.S.C. § 1692e(9) and Minn. Stat. § 332.37(12). (Compl. ¶¶ 41–43.) The Court recommends that this claim against Gurstel and ABC be dismissed for the reasons enunciated in Part III.A.

In Ms. Walker's proposed supplemental complaint, she alleges that Defendants abused legal process by using documents formatted to mimic formal pleadings without lawful service of process or a valid underlying case. The Court denies supplementation on the basis of futility, for the reasons given in Part III.A.

### F.   Count Six: Vicarious Liability/Respondeat Superior Against Gurstel and ABC

Ms. Walker contends that Gurstel and ABC are liable under state-law principles of vicarious liability and respondeat superior for John Doe's conduct. (Compl. ¶ 45.) She alleges that John Doe was acting as an agent for ABC, which in turn was acting under a contract with Gurstel. (*Id.* ¶ 44.)

"[V]icarious liability is the 'imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons.'" *Sutherland v. Barton*, 570 N.W.2d 1, 5 (Minn. 1997) (quoting Black's Law Dictionary). Under the doctrine of respondeat superior, "a duty of care arises not from the formation of a traditional employee/employer relationship, but from the common-law standard that '[a] person conducting an activity through servants or other agents is subject to liability for harm

24

resulting from his conduct if he is negligent or reckless.'" *Howe v. Kaal*, No. 25-1946 (JRT/ECW), 2026 WL 674051, at *12 (D. Minn. Mar. 10, 2026) (citing Restatement (Second) Agency § 213 (1958)).

Gurstel and ABC do not argue that principles of vicarious liability and respondeat superior do not apply here. Their only arguments are that Count Six did not allege any actionable conduct and that none of the other counts state a plausible claim for relief. (Defs.' Mem. Supp. Mot. J. Pleadings at 22–23.) It is true that Count Six itself does not detail any additional conduct by John Doe, but it does allege that Gurstel and ABC are liable for John Doe's unlawful conduct under the FDCPA and Minnesota law. This is sufficient to connect the vicarious liability/respondeat superior claim to John Doe's conduct alleged elsewhere in the Complaint. As far as the argument that none of the other counts state a plausible claim for relief, the Court has concluded that Ms. Walker has stated a plausible claim for intrusion upon seclusion against ABC.

Moreover, Gurstel and ABC filed their motion only on their behalf, and it would not be proper to dismiss any claims against John Doe based on that motion. *See Ballinger v. Cedar Cnty.*, 810 F.3d 557, 559 n.1 (8th Cir. 2016) (where a motion to dismiss did not include the John Doe defendants and those defendants had not been served, reversing the district court's decision to include the defendants in the order dismissing the plaintiff's claims). John Doe's conduct founds the basis for the vicarious liability claim, and no claims against him have been dismissed. Particularly in light of the Court's discussion of the intrusion upon seclusion claim in Part III.B, it is possible that Ms. Walker has stated a plausible claim for intrusion upon seclusion against John Doe. In any event, Gurstel and

25

ABC have not shown otherwise. Accordingly, the claim for vicarious liability against Gurstel and ABC should not be dismissed.

### G.    Defendant John Doe

This action was filed more than six months ago, and Ms. Walker has not served Defendant John Doe with the summons and complaint. Ms. Walker has known John Doe's name since at least September 2, 2025, when she identified him as "Kpakpo Moevi" in her original Complaint. (*See* Dkt. No. 1-1.) By separate Order, the Court has set a deadline of April 30, 2026, for Ms. Walker to file proof of service of process on John Doe/Kpakpo Moevi and warned her that failure to do so, without good cause, will result in a recommendation of dismissal under Federal Rule of Civil Procedure 4(m). (Order at 3, Dkt. No. 80.)

**IT IS HEREBY RECOMMENDED** that Gurstel and ABC's Motion for Judgment on the Pleadings (Dkt. No. 49) be **GRANTED in part** and **DENIED in part**, as follows.

1.  Plaintiff's claim for false, deceptive, and misleading representations (Count One) against Gurstel and ABC be **DISMISSED WITH PREJUDICE**;

2.  Plaintiff's claim for intrusion upon seclusion/invasion of privacy (Count Two) against Gurstel be **DISMISSED WITH PREJUDICE**;

3.  Plaintiff's claim for intrusion upon seclusion/invasion of privacy (Count Two) against ABC not be dismissed;

26

4. Plaintiff's claim for failure to provide required documents and unlawful collection practices (Count Three) against Gurstel and ABC be **DISMISSED WITH PREJUDICE**;

5. Plaintiff's claim for fraudulent misrepresentation against federal agency (Count Four) against Gurstel be **DISMISSED WITH PREJUDICE**;

6. Plaintiff's claim for abuse of process/simulated legal process (Count Five) against Gurstel and ABC be **DISMISSED WITH PREJUDICE**; and

7. Plaintiff's claim for vicarious liability/respondeat superior (Count Six) against Gurstel and ABC not be dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Supplemental Complaint (Dkt. No. 63) is **DENIED**.

Date: April 15, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** A report and recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).